**In re Paul D. LEVINE, Debtor.**

**No. 01–49437.**

United States Bankruptcy Court, E.D. Michigan.

Dec. 23, 2002.

---

Nathan Resnick, Bloomfield Hills, MI, for Debtor.

Howard Sher, Troy, MI, for trustee.

Karin Avery, West Bloomfield, MI, for objecting creditors.

## OPINION RE: CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENTS WITH DEBTOR AND WITH HELEN LEVINE

JEFFREY R. HUGHES, Bankruptcy Judge.

Stuart A. Gold ("Chapter 7 Trustee") requests that this court approve a settlement he has reached with Debtor and Debtor's former wife, Helen Levine. The settlement relates to the Chapter 7 Trustee's objection to Debtor's discharge and to various transfers which Helen Levine had received from Debtor. For the reasons stated in this opinion, I will approve the Chapter 7 Trustee's settlement with Ms. Levine. However, I am denying the Chapter 7 Trustee's motion to approve the settlement with Debtor.

### BACKGROUND

On February 1, 2002, the Chapter 7 Trustee filed an objection to Debtor's discharge. 11 U.S.C. § 727(a).[1] Metropolitan Title Company, a creditor, had already filed an objection to Debtor's discharge on December 10, 2001. Joe Hoskins and oth-

---

1. December 10, 2001 was the original deadline set for objecting to Debtor's discharge. However, Debtor and the Chapter 7 Trustee stipulated to extend the time within which he could file an objection, first to January 7, 2002, and then to February 4, 2002.

er creditors (the "Hoskins Group") had filed yet another objection to Debtor's discharge on January 7, 2002. All three objections are currently pending as separate adversary proceedings before the Honorable Burton Perlman.[2]

The Chapter 7 Trustee's objection to Debtor's discharge is based upon three different arguments. First, the Chapter 7 Trustee alleges that Debtor transferred a substantial tax refund to his wife, Helen Levine, within one year prior to the petition with the intent to hinder, delay, or defraud his creditors. 11 U.S.C. § 727(a)(2)(A). Second, the Chapter 7 Trustee alleges that Debtor knowingly and fraudulently failed to disclose in his schedules (a) the transfer of the tax refund, (b) payments made to creditors from the tax refund, (c) the division of Debtor's marital estate pursuant to a post-petition judgment of divorce with his wife, and (d) the existence of other property in which Debtor had an interest. 11 U.S.C. § 727(a)(4)(A). Third, the Chapter 7 Trustee alleges that Debtor, through the post-petition judgment of divorce with his wife, transferred interests in two companies, Irvine Berwick, Inc. and Irvine Lagoons, Inc., to his wife with the intent to hinder, delay, or defraud the Chapter 7 Trustee. 11 U.S.C. § 727(a)(2)(B).

The Chapter 7 Trustee has also pursued Ms. Levine concerning these same transfers. However, the Chapter 7 Trustee has not commenced an adversary proceeding against Ms. Levine to recover any of these transfers.

On July 1, 2002, the Chapter 7 Trustee, Debtor, and Ms. Levine reached a three-party settlement concerning the Chapter 7 Trustee's objection to Debtor's discharge and his claims against Ms. Levine. The settlement provides for the resolution of the Chapter 7 Trustee's objection to Debtor's discharge in exchange for $5,000 if paid by December 31, 2002, or for $15,000 if paid after that date. The settlement provides for the resolution of the Chapter 7 Trustee's claims against Ms. Levine in exchange for the return of Debtor's interests in Irvine Berwyk, Inc. and Irvine Lagoons, Inc. and payment of $30,000. The settlement with Ms. Levine further provides for an increase in the payment obligation from $30,000 to $130,000 if Ms. Levine herself files for relief under the Bankruptcy Code. Ms. Levine has in fact now commenced her own Chapter 7 proceeding.

The settlement agreement is conditioned upon the Chapter 7 Trustee securing approval of the agreement from this court. On July 22, 2002, the Chapter 7 Trustee filed a motion to approve the settlement pursuant to Fed. R. Bankr.P. 9019(a). The Chapter 7 Trustee provided all creditors with notice of the settlement agreement he had reached with Debtor and Ms. Levine and gave each creditor the opportunity to object. *Cf.* LBR 9014–1 (Bankr. E.D.Mich.). The Hoskins Group filed an objection to the settlement. The record does not indicate any other objection to the settlement.

---

2. Although the Bankruptcy Code and the Bankruptcy Rules describe a party's challenge to a Chapter 7 debtor's discharge as an "objection," the objecting party's challenge is actually embodied in a complaint which is prosecuted as part of an adversary proceeding separate from the underlying bankruptcy case itself. 11 U.S.C. § 727(c)(1); Fed. R. Bankr.P. 4004(a), 7001(4). Judge Perlman and I are both visiting judges in this district. These matters are divided between Judge Perlman and me because the adversary proceedings representing the various objections to discharge have been assigned to Judge Perlman whereas matters relating to Debtor's underlying bankruptcy case, including the pending motion to approve the Chapter 7 Trustee's settlement, are assigned to me.

The Hoskins Group opposed the settlement with Ms. Levine because of Ms. Levine's own Chapter 7 bankruptcy proceeding. The Hoskins Group asserted in its written objection that Ms. Levine's subsequent Chapter 7 proceeding not only puts into question the Chapter 7 Trustee's ability to still recover the interests in Irvine Berwyk, Inc. and Irvine Lagoons, Inc., but also renders the money recovery against her, whether it be $30,000 or $130,000, worthless. As for the settlement with Debtor, the Hoskins Group argued that Debtor should not be permitted to purchase a discharge which he does not deserve.

> The claims against the Debtor aggregate in excess of $2,772,000 ... Having fraudulently transferred property worth over $300,000 out of the reaches of his creditors, the Debtor should not be able to "buy" his discharge for the paltry sum of $5,000.

Hoskins Group Objection, p. 2.

The Hoskins Group's objection was originally scheduled for hearing on September 6, 2002. The parties agreed to adjourn the hearing twice and had requested that it be again adjourned. However, I refused the last request and a hearing was held on November 8, 2002. The Chapter 7 Trustee, the Hoskins Group, and the Debtor all made appearances at the hearing.[3]

Argument at the November 8, 2002 hearing focused on the Chapter 7 Trust-

ee's settlement of his objection to Debtor's discharge.[4] The Chapter 7 Trustee argued that it is no longer in the creditors' interest to expend estate assets to challenge Debtor's discharge and, therefore, the money offered by Debtor, even if nominal, is justified. The Chapter 7 Trustee also argued that the Hoskins Group would not be prejudiced by the settlement because the Hoskins Group's own objection to discharge would be unaffected by the settlement. The Hoskins Group's response to this latter argument was that the Chapter 7 Trustee has an independent duty to challenge a debtor's discharge and that the Chapter 7 Trustee cannot be excused of this duty because other interested parties have also objected to the discharge.

No proofs were offered at the November 8, 2002 hearing. I took the matter under advisement after the close of oral argument.[5]

## ANALYSIS

As already discussed, the three-party settlement between the Chapter 7 Trustee, Debtor, and Ms. Levine is conditioned upon its approval by this court. However, paragraph 7 of the settlement agreement also provides that the settlement reached between the Chapter 7 Trustee and Ms. Levine may still be effective even if the Chapter 7 Trustee's agreement to withdraw his objection to Debtor's discharge is not approved. Therefore, I will consider

[3] Debtor supported the Chapter 7 Trustee's motion. His only objection was with respect to the Chapter 7 Trustee's request that the court consider the two settlements separately. I have questions concerning Debtor's standing to appear in connection with these motions because the estate appears to be insolvent (i.e., creditors' claims exceed the value of the estate's assets). In any event, I have considered the arguments made by Debtor in making my decision.

[4] At the hearing, the Hoskins Group withdrew its objection to the Chapter 7 Trustee's settlement with Ms. Levine.

[5] On November 12, 2002, the Chapter 7 Trustee filed a supplementary brief in support of his motion to approve the settlement. I did not request the brief nor did I authorize the parties to file post-hearing briefs. Nonetheless, I have read the Chapter 7 Trustee's supplementary brief and have considered it in making my decision.

the requested approval of the Chapter 7 Trustee's settlement with Ms. Levine separately from the requested approval of the Chapter 7 Trustee's settlement with Debtor.

### Settlement with Ms. Levine.

■ In *In re Dalen,* 259 B.R. 586 (Bankr.W.D.Mich.2001), I discussed in considerable detail the standard against which a trustee's motion to approve a settlement should be assessed. The test is whether the trustee's decision to enter into the settlement is consistent with the trustee's fiduciary obligations to the estate, they being the duty of obedience (*i.e.,* the obligation not to act outside of the trustee's permitted authority), the duty of loyalty (*i.e.,* the obligation not to act in the trustee's own interests), and the duty of care (*i.e.,* the obligation not to act negligently). *Id.* at 609–13.

■ Nothing in the record suggests that the Chapter 7 Trustee, in reaching his settlement with Ms. Levine, has breached either his duty of obedience or his duty of loyalty. The Chapter 7 Trustee clearly has the authority to enter into settlements with third parties accused of receiving fraudulent transfers and there is no indication that the Chapter 7 Trustee's relationship with Ms. Levine is anything but at arm's length. Because the relationship between the Chapter 7 Trustee and Ms. Levine is at arm's length, the Chapter 7 Trustee is also entitled to the presumption that he exercised good business judgment in making the settlement that he did, *In re Dalen,* at 613. There is nothing in the record to overcome this presumption. Therefore, I am satisfied that the Chapter 7 Trustee has also fulfilled the duty of care he owed the estate when he negotiated the settlement with Ms. Levine. Consequently, the Chapter 7 Trustee's settlement with Ms. Levine is approved.

### Settlement with Debtor.

In *In re Traxler,* 277 B.R. 699 (Bankr. E.D.Tex.2002), the court discussed the various approaches utilized by bankruptcy courts to approve proposed dismissals of Section 727 objections to discharge in exchange for money or other consideration. The approach that the *Traxler* court preferred, which is also the approach most often used by other courts, is what I describe as the "cautious but pragmatic" approach. It requires the court to consider such settlements with a "heightened skepticism and to subject them to close scrutiny . . . ." *Id.* at 705. However, the court may nonetheless approve the settlement if it is satisfied even at this higher level of examination that the interests of the estate are best served by accepting the benefits of the compromise reached.[6]

An example of the cautious yet pragmatic approach is *In re Bates,* 211 B.R. 338 (Bankr.D.Minn.1997). In *Bates,* the court approved a monetary settlement of the Chapter 7 trustee's objection to discharge notwithstanding the United States trustee's opposition to that settlement. The debtor had omitted from his schedules and statement of affairs a significant number

---

**6.** The *Traxler* court identified two other approaches. One simply prohibits all such settlements. *See, e.g., In re Moore,* 50 B.R. 661 (Bankr.E.D.Tenn.1985). The courts which have adopted this approach rely upon public policy considerations. They reason that Section 727 sets a minimum standard of conduct expected of debtors which, if violated, cannot be thereafter remedied by the debtor's purchase of her discharge. The other approach is illustrated in *In re Margolin,* 135 B.R. 671 (Bankr.D.Colo.1992). This approach would allow any monetary settlement relating to an objection to discharge provided that the settlement is fully disclosed to all creditors and those creditors themselves are given the opportunity to intervene and proceed with the further prosecution of the objection.

of assets and voidable transfers.[7] The settlement proposed by the debtor was for the debtor to pay the estate $250,000 from assets which the debtor claimed as exempt in exchange for not only the Chapter 7 trustee's withdrawal of his objection to discharge but also the Chapter 7 trustee's release of various monetary claims he had made against both the debtor and third parties.

> [T]he proposed settlement represents an attempt by the Trustee to act in the best interests of the estate by limiting the estate's exposure to the risks and expenses of trial in the face of an uncertain outcome. In light of the public policy concerns necessarily implicated by § 727 proceedings, settlements of this type are to be viewed with skepticism and are subject to especially close scrutiny by the bankruptcy court. Nevertheless, a *per se* rule against settlement in all cases is inappropriate, as such a rule would wholly deny the benefits of compromise in cases where settlement is in the best interests of the estate.

*In re Bates,* 211 B.R. at 348.

As a counterpoint, the court in *Traxler* used the cautious yet pragmatic approach to deny approval of a settlement proposed by the trustee concerning her objection to debtor's discharge. The settlement in that instance was not monetary. Rather, the settlement provided that the trustee's objection would be dismissed but that two specific creditors would nonetheless have their claims excepted from discharge. The settlement further provided that any other creditor who objected to the trustee's settlement would have the option of either negotiating an agreement with the debtor to have its claim also excepted from discharge or assuming the prosecution of the trustee's objection to discharge as her successor. The *Traxler* court found that such a settlement simply was not within the "best interests of creditors," especially in light of the heightened scrutiny settlements of that type are to be given. *In re Traxler,* pp. 705–706.

Each of the decisions which have relied upon the "cautious yet pragmatic" approach to Section 727 settlements have focused upon the court's supposed authority to interpose its own judgment in conjunction with settlements reached by a trustee on behalf of the estate. For example, in *In re Bates,* the court started its analysis with the following statement:

> Rule 9019 of the Federal Rules of Bankruptcy Procedure vests the bankruptcy court with broad authority to approve or disapprove all compromises and settlements affecting the bankruptcy estate. The decision of whether to approve a proposed settlement is within the sound discretion of the bankruptcy court.

*In re Bates,* at 343.

The *Bates* court then proceeded to evaluate the proposed settlement by weighing the factors most judges, but not this judge, have used to determine whether the proposed settlement is in the "best interest of the estate" or "fair and equitable." The *Bates* court concluded that of the five criteria it used to make its determination, two favored approval of the settlement, two favored denial, and one was neutral.[8]

---

7. Actually, the Chapter 7 trustee in *Bates* had filed a complaint to revoke debtor's discharge because his concealment and transfer of assets had not been discovered until after his discharge had been granted.

8. The five criteria considered were:
 (1) the probability of success on the merits;

(2) the difficulties in collection of any judgment;

(3) the complexity of the litigation and the effect that complexity might have on expense, convenience, or time;

(4) the paramount interests of creditors; and

The problem with the analysis in *Bates* is that it subsumes that the trustee had the authority to enter into the settlement she did in the first place. Implicit, if not explicit, in *Bates* and all other decisions which have incorporated the "cautious yet pragmatic" approach is the premise · that Rule 9019(a) is an enabling provision which authorizes the trustee to settle any and all disputes involving the estate provided only that the bankruptcy court determines that the settlement is in the "best interest of the estate" and is "fair and equitable," whatever those terms mean. I do not agree with this premise. A trustee's authority to compromise claims and to enter into settlements does not derive from Rule 9019(a). *In re Dalen,* 259 B.R. at 594–601. Rule 9019(a) does not require the court to intervene in each and every instance where the trustee has reached a settlement. Rule 9019(a) does not state that the court "shall" approve all compromises and settlements reached by the trustee. It provides only that the court "may" approve a settlement or compromise, and then only if the trustee has filed a motion seeking such approval. *Id.* The purpose of Rule 9019(a) is simply to give the trustee the opportunity to secure from the court a declaration that her decision to enter into a settlement was consistent with her duties as a fiduciary so as to avoid at some later date a possible objection to her fees or a possible claim against her bond on the basis that she had breached those duties by entering into the settlement. *In re Dalen,* at 602–604. As already discussed, the fiduciary duties which the trustee must honor in connection with her decision to reach a settlement are the duties of obedience, loyalty, and care.[9]

■ In the instant case, the Chapter 7 Trustee has properly brought a Rule 9019(a) motion concerning the tentative settlement he has reached with Debtor concerning the Chapter 7 Trustee's objection to his discharge. The Chapter 7 Trustee has as much right in this instance to ask the court to predetermine whether his decision to enter into the proposed settlement is consistent with the exercise of his fiduciary duties as he does with respect to any other settlement he might reach in connection with the performance of his duties. However, in evaluating this request, I must evaluate specifically whether the proposed agreement is within the scope of the Chapter 7 Trustee's authority or not, for if it is not, then I must conclude that the Trustee has not fulfilled his duty of obedience. Indeed, my own independent duty to preserve the integrity of the judiciary would prevent me from giving judicial approval to an agreement which is otherwise unlawful. As the Seventh Circuit observed in *Donovan v. Rob-*

---

(5) whether the conclusion of the litigation promotes the integrity of the judicial system.
*Bates,* at 343.

**9.** *In re Mavrode,* 205 B.R. 716 (Bankr.D.N.J. 1997) well illustrates the misplaced reliance upon Section 9019(a) as authority for anything other than permitting a court to declare that a trustee has properly performed her fiduciary duties in conjunction with a settlement. In *Mavrode,* a creditor, as opposed to the trustee, sought Rule 9019(a) approval of a settlement concerning its objection to debtor's discharge. One would have thought that the court would have been more persistent in asking why the matter was even before it since it was not on the trustee's motion. Indeed, the court specifically observed that Rule 9019(a) motions are to be brought by the trustee. *Id.* at 719. Nonetheless, the court ignored this deficiency in the motion on the apparent assumption that Rule 9019(a) permits court approval of any settlement brought before it which involves the estate. The court then "approved" the settlement using the "best interests" and "fair and equitable" standards courts have traditionally used for Rule 9019(a) motions. *Id.* at 721–722.

*bins,* 752 F.2d 1170, 1176 (7th Cir.1985), "if a consent decree provided that a violator could be punished by having his ear cut off, the judge could not sign it . . . ." While a Chapter 7 trustee's decision to forego proceeding with an objection to discharge in exchange for money is not as severe as lopping off one's ear, the principle enunciated in *Donovan v. Robbins* is the same. A party simply cannot, through an agreement approved by a court, secure authority to engage in an activity which is not otherwise permitted by law. Therefore, in considering the Chapter 7 Trustee's motion for approval of the proposed settlement with Debtor, I am squarely faced with the question of whether a trustee has the authority under Section 727 or some other provision of the Bankruptcy Code to accept money or other consideration in lieu of proceeding with the objection. I conclude that a trustee does not have that authority.

 A Chapter 7 trustee's general authority to compromise claims and to enter into settlements does not derive from any specific provision of the Bankruptcy Code.[10] Rather, it arises as a natural consequence of a Chapter 7 trustee's statutory responsibilities to reduce to money property of the estate, to object to the allowance of claims, and to otherwise close the estate as expeditiously as is compatible with the best interests of creditors and other parties in interest. 11 U.S.C. § 704. For example, a Chapter 7 trustee has the inherent authority to settle a $5,000 account receivable for $3,000. Similarly, a Chapter 7 trustee has the inherent authority to settle her objection to a creditor's $10,000

proof of claim by allowing it at a reduced amount of $5,000. Finally, a Chapter 7 trustee has the inherent authority to settle a $20,000 preference action against a creditor for $15,000. In none of these instances is the trustee required to secure separate authority from the court to consummate the settlement. The Chapter 7 trustee's authority to settle these matters derives simply from her authority to administer them.

However, a Chapter 7 trustee does not derive his authority to object to a debtor's discharge from either his authority to administer the estate's property or the claims made against it. Rather, a Chapter 7 trustee's authority derives from Section 727 itself.

> The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

11 U.S.C. § 727(a).

That a Chapter 7 trustee's authority to object to a debtor's discharge is separate and apart from his general authority to administer the estate and claims made against it is confirmed by Section 704. Whereas the Chapter 7 trustee's general administrative duties are set forth in subparts (1), (2), and (5) of that section, her duty to object to a debtor's discharge is specifically set forth in a separate subpart:

> The trustee shall—
>
> (1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as

---

10. Indeed, the Bankruptcy Code does not require bankruptcy court involvement in the settlement process. *See, In re Dalen,* 259 B.R. at 594–602. By way of comparison, there are Bankruptcy Code sections which specifically require court intercession with respect to other aspects of a trustee's administration of a bankruptcy estate. For example, a trustee must procure court approval to assume or reject an executory contract or unexpired lease, 11 U.S.C. § 365(a), or to obtain post-petition financing beyond ordinary trade credit. 11 U.S.C. § 364(b)–(d).

expeditiously as is compatible with the best interests of parties in interest;

(2) be accountable for all property received;

. . .

(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;

(6) **if advisable, oppose the discharge of the debtor;**

. . .

11 U.S.C. § 704 (emphasis added).

Section 727(a) describes a judicial process. It commands the court to grant the debtor a discharge except under certain circumstances. "The court shall grant debtor a discharge unless—. . . ." 11 U.S.C. § 727(a). Indeed, Rule 4004(a) reinforces Section 727's imperative to the court by stating that the court is to grant the discharge "forthwith." While Section 727(c) allows the Chapter 7 trustee, creditors, and the United States trustee to participate in the process, their participation is not necessary. Nor is even the debtor's. No motion is required to initiate the court's issuance of the discharge order. Cf. Fed. R. Bankr.P. 9013. Moreover, no objection is needed for the court to deny a debtor's discharge. For example, courts routinely do not issue discharges if their own records indicate that a debtor had already received a Chapter 7 discharge within 6 years of filing the debtor's current petition. 11 U.S.C. § 727(a)(8).

■ Put simply, it is the court which ultimately controls the discharge process, not the creditor, the Chapter 7 trustee, or the United States trustee. Once the objection is filed, the issue is outside of the objecting party's control. The objecting party certainly may participate in the process. However, it may not dictate its outcome. It is for this reason that a trustee's objection to discharge cannot be equated with a trustee's separate authority to settle claims which naturally arise from his duty to administer the bankruptcy estate and claims made against it. An objection to discharge is more analogous to a criminal complaint than a civil complaint. It initiates a process to determine whether a debtor is entitled to her discharge in much the same way as a criminal complaint initiates the process to determine whether a person is guilty of a crime. However, once the process is initiated, the process is out of the complainant's hands. The determination of whether the debtor is entitled to her discharge or the defendant is guilty of a crime is left to the judicial process.

■ Once a party has filed a complaint objecting to discharge, it has only two options—the objecting party may either (a) participate in the process by prosecuting its objection to judgment (i.e., an order barring the entry of the debtor's discharge), or (b) withdraw from the process by seeking the dismissal of its complaint. In the instant case, the settlement reached between the Chapter 7 Trustee and Debtor appears to contemplate a third alternative, that being the entry of a money judgment against Debtor in the amount of $15,000 which may be satisfied in full by a payment of $5,000 by December 31, 2002. I say "appears" because the settlement also contemplates the immediate dismissal of the adversary proceeding upon approval of the settlement. The Chapter 7 Trustee apparently is under the impression that the adversary proceeding may be dismissed and a judgment entered in the base case. He is mistaken. I recognize that judgments are not the exclusive province of adversary proceedings; judgments may also be entered in contested matters. Fed. R. Bankr.P. 9014. However, judgments do not come out of thin air. They necessarily must be the product of either an adversary proceeding or a contested

matter. Therefore, if a judgment is to enter in connection with the Chapter 7 Trustee's objection to Debtor's discharge, it must enter in the adversary proceeding, for there is no contested matter in the base case which would support such a judgment.

As already discussed, a Section 727(a) objection is not property of the estate which is to be reduced to money nor is it a contested claim against the estate which must be resolved before the Section 726 distribution can be completed. It is part of a process whereby the bankruptcy court itself determines whether a debtor is to receive a discharge or not. If a Chapter 7 trustee wishes to object, then the Chapter 7 trustee must file an adversary proceeding. Fed. R. Bankr.P. 7001(4). The same is true if an individual creditor or the United States trustee elects to object. However, the only type of "judgment" which can be entered in such an adversary proceeding is a judgment sustaining the objection. Such a judgment, if entered, would then excuse the court from its duty to enter the debtor's discharge under Section 727(a). However, the objecting party, whether that party is the trustee, the United States Trustee, or an individual creditor, may not parlay his, her, or its decision to participate in the process into an economic benefit. It makes no difference whether the monetary recovery benefits only the competing creditor or the entire creditor body. The opportunity to participate in the discharge process under Section 727(a) cannot be sold by the trustee, individual creditor, or the United States Trustee, nor can it be bought off by the debtor.

I recognize that it is tempting to permit Chapter 7 trustees the ability to forego proceeding with an objection to discharge in exchange for consideration when presented with factual situations like that in *Bates*. The pragmatist in me also counsels that the estate is better off with half a loaf than no loaf at all. Even more compelling is the argument that a debtor who has stripped the bankruptcy estate of its assets through her fraud should not be able to then walk away with her discharge as well because the estate cannot afford to object to her discharge. Giving the Chapter 7 trustee the ability to negotiate a monetary solution in such instances would at least impose some penalty upon such a debtor for her transgressions. Indeed, one could argue that a Chapter 7 trustee's authority to accept money in exchange for her dismissal of an objection to the debtor's discharge is analogous to a prosecutor's authority to plea bargain with an accused felon.

Unfortunately, I cannot find sufficient support in Section 727 to justify these arguments. The pragmatic approach works well when the debtor's misconduct is at issue, which it is when the objection is based upon one or more of the exceptions set forth in Sections 727(a)(2)–(7). However, the validity of accepting consideration in exchange for the dismissal of an objection becomes much less apparent when the exception to discharge is, for example, based instead upon the debtor having previously received a Chapter 7 discharge within the period proscribed by Section 727(a)(8). What happens when the Chapter 7 trustee seeks dismissal of a Section 727(a)(8) objection in exchange for consideration offered by the debtor or, more likely, a benefactor of the debtor? The cautious but pragmatic approach suggests that there may be some set of circumstances (*i.e.*, the consideration is so substantial and the collectability of the debtor so remote) that the offer would be simply too good for a pragmatic court to refuse no matter how high the degree of special scrutiny is to be. However, I doubt that any court would accept a Chapter 7 trust-

ee's argument that it may ignore Section 727(a)(8) simply because the Chapter 7 trustee was able to make a great deal.

Therefore, the courts which have adopted the approach taken by *Bates* must explain why Section 727 permits pragmatism with respect to some exceptions but not with respect to others. Moreover, they must also explain why the pragmatic approach cannot even be uniformly applied within the misconduct exceptions themselves. For example, suppose there are two debtors, both of whom clearly concealed assets prior to filing their petitions and both of whom are now facing objections to discharge by the Chapter 7 trustee. One debtor comes from a wealthy family and her father offers to pay an amount which would guaranty a 50% dividend to creditors of an otherwise valueless estate. The other debtor, however, is not as well-heeled and, therefore, can offer nothing in exchange for the Chapter 7 trustee's dismissal of the objection to discharge. Should the pragmatic court ignore the misconduct under Section 727(a)(2)(A) in the one instance and grant a discharge, but enforce Section 727(a)(2)(A) and deny the discharge in the other?

Consider two other debtors. Both have been accused of concealing assets by the Chapter 7 trustee. Both have negotiated a dismissal of the objection in exchange for assets they have claimed as exempt. However, one debtor's efforts to conceal were so brash that her intent to defraud is obvious whereas the other debtor was much more clever at obscuring her intent. If the blatantly fraudulent debtor can show that a denial of her discharge would be of no benefit to the estate (*e.g.*, she is disabled and all of her assets are exempt), should the pragmatic court accept her offer and permit her discharge notwithstanding her clear violation of Section 727(a)(2)(A)? Conversely, should the cleverness of the other debtor dictate when the court should be pragmatic or not? In other words, should the fact that one debtor was better at covering her fraud than the other make the clever one more deserving of a discharge than the brash one even though both are offering the exact same amount in settlement?

If Section 727 in fact required a court to defer to the best interests of creditors or some other pragmatic criterion in conjunction with its duty to grant or deny a Chapter 7 debtor's discharge, or if Section 727 specifically allowed debtors to offer money or other consideration to resolve issues of whether the discharge should be granted or not, I would salute smartly and deal with these questions as best I could. However, Section 727 imposes no such criteria and I see no reason to read such criteria into Section 727 given the problems they present.

I also do not believe that public policy is being disserved by interpreting Section 727 as offering no alternative other than denial of discharge when an objection is made by a creditor or. a Chapter 7 trustee. Congress, in enacting Section 727, had to balance its interest in providing Chapter 7 debtors a "fresh start" through a prompt and certain discharge with the competing interest of not giving discharges to those debtors who fall within any of the exceptions set forth in Section 727(a). The balance Congress has struck is straightforward. In most instances, the court is to grant the debtor's discharge immediately after the 60th day from the date first scheduled for the debtor's Section 341 meeting has expired unless the record before it at that time establishes that the debtor falls within one of the Section 727(a) exceptions. An interested creditor or a Chapter 7 trustee may, but is not required, to contribute to the record which

the court is to consider. More to the point, an interested creditor or a Chapter 7 trustee may extend the time to develop the record through the prosecution of its own objection to discharge. Granted, some debtors who would fall within one or more of the Section 727(a) exceptions will nonetheless receive discharges because a Chapter 7 trustee cannot afford to participate in this process. However, Congress appears to have been willing to accept this price as the cost of a system which presumes not only that a debtor is entitled to a discharge [11] but that the discharge is to be granted "forthwith." Fed. R. Bankr.P. 4004(c).[12]

The Supreme Court is authorized by statute to adopt rules to supplement the Bankruptcy Code:

> The Supreme Court shall have the power to prescribe by general rules, the forms of processes, writs, pleadings, and motions, and the practice and procedure in cases under title 11.
>
> Such rules shall not abridge, enlarge, or modify any substantive right.
>
> The Supreme Court shall transmit to Congress not later than May 1 of the year in which a rule prescribed under this section is to become effective a copy of the proposed rule. The rule shall take effect no earlier than December 1

of the year in which it is transmitted to Congress unless otherwise provided by law.

28 U.S.C. § 2075.

*Collier on Bankruptcy* states that the bankruptcy rules "have the force of law and must be followed." 1 *Collier on Bankruptcy*, ¶ 1.04 (Matthew Bender 5th ed. rev.2000). Although *Collier* cites no authority for this proposition, it certainly can be deduced from the fact that no rule is effective until it is first submitted to Congress. 28 U.S.C. § 2075. The only limits on the breadth of a bankruptcy rule is that is must relate to "practice and procedure in cases under Title 11" and that it must "not abridge, enlarge or modify any substantive right." *Id.*

If an objecting creditor files an objection to discharge but later decides that it does not wish to proceed further with it, then it must comply with Rule 7041. Fed. R. Bankr.P. 7041. Generally, Rule 7041 tracks Rule 41 of the Federal Rules of Civil Procedure. Dismissal of an adversary proceeding or a contested matter in most instances is automatic if it is requested before a response is filed or if all parties stipulate to the dismissal. However, adversary proceedings based upon an objection to discharge are the exception. An

**11.** Congress described Section 727's discharge provision as "the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6340. The importance of this right to discharge requires the court to construe objections to discharge strictly against the objector and in favor of the debtor. *See, Rosen v. Bezner,* 996 F.2d 1527, 1531 (3rd Cir.1993) and *Wazeter v. Michigan Nat'l Bank (In re Wazeter),* 209 B.R. 222, 226 (W.D.Mich. 1997).

**12.** I would also note that uninterested creditors and an impoverished estate do not necessarily guaranty that an undeserving debtor

will slip the noose and receive her discharge. The United States trustee, by statute, is directed to perform all duties prescribed for him under the Bankruptcy Code. 28 U.S.C. § 586(a)(5). One of these duties is to object to the debtor's discharge. 11 U.S.C. § 727(c)(1). The United States trustee, unlike a Chapter 7 trustee, is not constrained by the financial resources of a particular estate in deciding how to fulfill this duty. Consequently, I would expect the United States trustee, in at least the more egregious instances, to contest the discharge of a debtor even if the economics would not otherwise warrant an objection by an individual creditor or by the Chapter 7 trustee.

objecting party may not withdraw its objection to debtor's discharge without first providing notice of the intended withdrawal to the Chapter 7 trustee, the United States trustee, and such other persons as the court directs. Moreover, the court may in its discretion condition the withdrawal upon such terms as it deems proper. It is irrelevant whether the objecting party's requested withdrawal is with or without the debtor's consent. Fed. R. Bankr.P. 7041.

The Advisory Committee's notes to Rule 7041 explain why a voluntary dismissal of an objection to discharge is to be subject to more stringent rules then other voluntary dismissals.

> Dismissal of a complaint objecting to a discharge raises special concerns because the plaintiff may have been induced by an advantage given or promised by the debtor or someone acting in his interest. Some courts by local rule or order have required the debtor and his attorneys or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection. By specifically authorizing the objection to impose conditions in the order of dismissal this rule permits the continuation of this salutary practice.

Fed. R. Bankr.P. 7041, Advisory Committee's Note.

Restricting the voluntary dismissal of an objection to discharge raises the specter of an objecting creditor or Chapter 7 trustee becoming an involuntary investigator and/or prosecutor for the court. However, such concerns are not well founded. Nothing within Rule 7041 indicates that the court has within its discretion the authority to deny outright the stipulated withdrawal of an objection to discharge, let alone the authority to compel the objecting party to proceed with the objection. I do not interpret the Rule 7041 restrictions as potential leg irons for an objecting party who has had a change of heart concerning its involvement in the Chapter 7 discharge process. I recognize that there may be any number of legitimate reasons why an individual creditor or a Chapter 7 trustee may wish to withdraw a previously filed objection to the debtor's discharge. The most common is that the cost of prosecuting the objection no longer justifies the benefits which would be derived from the denial of the discharge. Perhaps the objection had been motivated by the debtor's presumed ability to accumulate future wealth but the debtor's prospects subsequently diminished. Or perhaps discovery conducted after the commencement of the adversary proceeding revealed substantial evidentiary impediments which had not been foreseen when the objection had originally been filed.

It is not the court's place to compel the objecting party to press forward with an objection if in fact it is no longer in that party's own economic interest to proceed. Neither an individual creditor nor a Chapter 7 trustee should be irrevocably burdened with enforcing the standards imposed by Section 727 for the grant of a Chapter 7 discharge. I am dubious that either an individual creditor or a Chapter 7 trustee would file a complaint objecting to a debtor's discharge for any reason other than selfishness. That is, an individual creditor selfishly wants to collect its debt and a Chapter 7 trustee selfishly wants the entire creditor body to be able to collect their debts. Therefore, I see no rationale for imposing the unwanted mantle of a quasi-prosecutor upon an objecting creditor or Chapter 7 trustee once the objection has been filed. Indeed, requiring a Chapter 7 trustee to proceed with an objection to discharge when such pursuit is no longer in the best interest of creditors places

the Chapter 7 trustee at odds with her duties as a fiduciary to those creditors. A Chapter 7 trustee's duty of loyalty is to the beneficiaries of the bankruptcy estate, they being the debtor's unsecured creditors. I do not find anything within Section 727 or Rule 7041 which requires the Chapter 7 trustee to ignore this duty in instances when the granting of a debtor's discharge is in question.

■ However, it is the court's place to condition the objecting party's withdrawal on such terms as it deems proper. Fed. R. Bankr.P. 7041. Rule 9011(b) applies no less to a complaint for denial of a debtor's discharge than it does to any other complaint filed by a plaintiff in an adversary proceeding. Each allegation contained in a party's objection to a debtor's discharge must either be supported by actual evidence or be based upon the reasonable belief that the requisite evidentiary support will be established once there has been an opportunity to conduct discovery. Fed. R. Bankr.P. 9011(b)(3). Therefore, dismissal of an objection to discharge should at the very least be conditioned upon the objecting party's disclosure of not only all of the information it had when it filed its objection but also all information the objecting party had accumulated through discovery subsequent to commencing the adversary proceeding. Obviously, such disclosure would assist the court in its own assessment of whether the debtor's discharge should be granted and it would assist other interested parties in

deciding whether further investigation by them of the debtor is warranted before the court is to make its final determination.

The critical point is that a party's objection to the granting of a Chapter 7 debtor's discharge is part of a judicially driven process and is not an end in and of itself. The filing of an objection to discharge by a party in interest means only that that party wishes to participate in this process as well. The objecting party may at any time after filing the objection elect to withdraw from participating in the process. However, the decision to withdraw does not necessarily end the process. The question remains as to whether the debtor should receive her discharge or not. The objecting party, by electing to participate in the process, is obligated to share with both the court and other parties in interest the evidence and other information it developed in connection with filing and then prosecuting its objection to the debtor's discharge. It is then up to the court and other interested parties to decide whether the process should continue or not. If another party is interested in continuing with the prosecution of the original party's objection, then that party may proceed. Moreover, even if there is no interest by any party in proceeding with the objection, it would still remain within the court's own prerogative to deny the debtor's discharge if the record before it supported that decision.[13]

In this case, the Chapter 7 Trustee argues that his authority to accept a mone-

13. Generally, the Bankruptcy Code envisions the bankruptcy court as an impartial arbiter of bankruptcy related disputes which are brought before it by the parties actually engaged in the bankruptcy proceeding. *In re Dalen*, 259 B.R. at 596–97. However, there are exceptions. For example, Section 707(b) contemplates the bankruptcy court proceeding on its own motion to dismiss a Chapter 7 proceeding if it appears that the proceeding would constitute a "substantial abuse" of the Chapter 7 process. While the bankruptcy

court may have the authority to *sua sponte* commence its own Section 707(b) proceeding, it is rarely done. Rather, the courts have relied upon the United States trustee to advocate the dismissal of the case so that the court itself can fulfill its separate role as arbiter of that issue.

In effect, the courts have made a similar decision to delegate with respect to their responsibility to assess the propriety of granting a debtor's discharge or not. It is to the

tary settlement in lieu of proceeding with his objection to Debtor's discharge derives not from Section 727 but from his alleged authority to do whatever ultimately proves to achieve the best result for creditors. This in essence, is the rationale which was adopted by the courts in *Bates,* 211 B.R. 338, and *Traxler,* 277 B.R. 699. Presumably, the Chapter 7 Trustee relies upon Section 704 as the source for this seemingly Machiavellian approach to the administration of bankruptcy estates. However, Section 704 does not contain within its provisions such an all encompassing grant of authority. Indeed, the only specific reference to "best interests" within Section 704 is with respect to the speed with which the Chapter 7 trustee is to act in bringing the administration of the bankruptcy estate to its conclusion. 11 U.S.C. § 704(1).[14]

More to the point, Section 704(6), which sets forth the Chapter 7 trustee's duty to object to a debtor's discharge, is devoid of any provision which would support the proposition that the trustee can ignore her duty to object to the debtor's discharge as long as the debtor can make it worth the estate's while.

The trustee shall—

. . .

(6) if advisable, oppose the discharge of the debtor;

11 U.S.C. § 704(6).

The phrase "if advisable" certainly gives the trustee the option of not prosecuting an objection to discharge both when making the decision to file an objection and when later making the decision to withdraw it. However, this phrase does not give the trustee the additional authority to accept money or other consideration in exchange for her dismissal of an objection to discharge. It is one thing to incorporate a cost/benefit analysis into assessing

---

United States trustee that the court defers to assess the facts as developed and to determine whether a denial of the debtor's discharge is warranted notwithstanding the lack of interest on the part of any creditor or the Chapter 7 trustee to prosecute the objection. In only the rarest of circumstances would I expect a court to disregard the United States trustee's decision not to proceed further with the process and to proceed with its own investigation as to the propriety of granting the debtor's discharge.

14. Section 704 reads in its entirety as follows:
The trustee shall—
(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest;
(2) be accountable for all property received;
(3) ensure that the debtor shall perform his intention as specified in section 521(2)(B) of this title;
(4) investigate the financial affairs of the debtor;
(5) if a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper;
(6) if advisable, oppose the discharge of the debtor;
(7) unless the court orders otherwise, furnish such information concerning the estate's and the estate's administration as is requested by a party in interest;
(8) if the business of the debtor is authorized to be operated, file with the court, with the United States trustee, and with any governmental unit charged with responsibility for collection or determination of any tax arising out of such operation, periodic reports and summaries of the operation of such business, including a statement of receipts and disbursements, and such other information as the United States trustee or the court requires; and
(9) make a final report and file a final account of the administration of the estate with the court and with the United States trustee.
11 U.S.C. § 704.

whether the Chapter 7 trustee has performed her duty to object to a debtor's discharge. It is quite another thing to attempt to read into the phrase "if advisable" the authority for a Chapter 7 trustee to abrogate her duty altogether simply because the debtor is able to offer the right price.

I also take heed of the admonition in the Advisory Committee's notes to Rule 7041 against dismissing objections to discharge in instances when "the plaintiff may have been induced to dismiss by an advantage given or promised by the debtor or someone acting in his interest." Fed. R. Bankr.P. 7041, Advisory Committee's Note. There is no question that the Advisory Committee was concerned that a debtor might corrupt the judicial process of granting or denying a discharge by "buying off" parties who otherwise had legitimate bases to participate in the process. It is equally clear that the Advisory Committee's concern cannot be assuaged simply by a showing that the debtor's motivation for offering the settlement was legitimate (*e.g.*, the debtor firmly believed that it would prevail at trial but was willing to pay something to make the objection go away). Otherwise, the Advisory Committee would not have commended as "salutary"[15] the practice of courts requiring "the debtor and his attorney or the plaintiff to file an affidavit that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection." Fed. R. Bankr.P. 7041, Advisory Committee's Note. Put simply, the imposition of an absolute prohibition against receiving consideration in exchange for the dismissal of an objection to discharge is necessary to prevent even the appearance that the objecting party and the debtor have engaged in the unseemly practice of buying a dis-

charge which is otherwise not permitted under the law.

The courts certainly have adopted such a prohibition when the dismissal is sought by an individual creditor who has objected to a debtor's discharge. In *Bates*, the court declared as *"per se* inappropriate" any settlement between an individual creditor and a debtor concerning the dismissal of an objection to discharge in exchange for consideration offered by or on behalf of the debtor. *In re Bates*, 211 B.R. at 346–347. The rationale used by *Bates* and other courts to reach this conclusion is that the creditor, when pursuing an objection to discharge, assumes a fiduciary role, and therefore must account to all creditors for the gains realized from successfully settling an objection to discharge. *Id.* See also, *Bankruptcy Receivables Management v. de Armond (In re de Armond)*, 240 B.R. 51, 56–58 (Bankr.C.D.Cal.1999); *Absolute Financial Services LP v. Kalantzis (In re Kalantzis)*, 2000 WL 33679401 (Bankr.D.N.H.2000).

I find this rationale to be contrived. While it is possible that at least some creditors in a bankruptcy proceeding may be altruists at heart, I seriously doubt whether any individual creditor who has filed an objection to discharge has done so out of concern for either public policy or the welfare of fellow creditors. Rather, I suspect that all such creditors file an objection to discharge because Sections 727(a)(2)–(6) supplement Section 523 by offering opportunities to avoid the discharge of a particular creditor's claim which are different from the opportunities presented by Section 523(a) alone. Other creditors certainly would benefit from a creditor's successful prosecution of a Section 727(a) objection whereas they would not benefit from the successful prosecution

---

**15.** Webster's Third New International Dictionary (1986) defines "salutary" as "producing a wholesome, corrective or ultimately beneficial effect."

of a creditor's Section 523(a) action. However, I am satisfied that this benefit is simply a by-product of the process and that the individual creditor's motivation at the conclusion of a successful objection to discharge under Section 727(a) is no less selfish than it was at the outset.

Moreover, imposing fiduciary obligations upon an individual creditor who prosecutes an objection to discharge has its consequences as well. For example, suppose a creditor commences a Section 727(a) objection to discharge but decides shortly thereafter that the costs and risks are too great to warrant prosecuting the objection further, particularly given the collectability of the debtor. Suppose further that there is a reasonable likelihood that the debtor could be persuaded to contribute exempt assets to settle the objection if the objection is taken to the courthouse steps. Finally, suppose the anticipated settlement is large enough to make it worthwhile to the creditor if the creditor itself were entitled to keep the entire settlement but not worthwhile to the creditor if the settlement had to be shared with all creditors. Would the fiduciary duty imposed upon the creditor by the *Bates* and *de Armond* courts require the creditor to proceed with the objection to discharge notwithstanding the fact that its costs in taking the objection to the courthouse steps would exceed what that creditor would itself receive in any subsequent distribution? If the answer is yes, would the creditor nonetheless retain the right to negotiate an arrangement with the trustee and/or the other creditors whereby the creditor could retain a larger portion of the proceeds for itself without compromising its supposed fiduciary obligations to the estate?

Drawing distinctions between creditor-induced and trustee-induced settlements also directs attention away from the actual problem which underlies settlements of objections to discharge for money or other consideration. Such distinctions cause the court to focus on the objecting party when in fact the focus should be on the debtor. The purpose of the exception to Rule 7041 for voluntary dismissals of objections to discharge is not to ensure that the objecting party has properly exercised its fiduciary duties in either negotiating or distributing a proposed settlement. Rather, the purpose of the exception is to ensure that the debtor has not bought her discharge by purchasing a voluntary dismissal from the objecting party. The Advisory Committee's censure of a debtor's purchase of an undeserved discharge is without qualification. The Advisory Committee makes no distinction between dismissals purchased from an objecting individual creditor and dismissals purchased from an objecting Chapter 7 trustee. All such dismissals are prohibited. There is no exception.

Rule 7041 requires the voluntary dismissal of an objection to discharge to be noticed not only to the United States trustee but also to the Chapter 7 trustee. I recognize that this requirement at least suggests that the prohibition against monetary settlements discussed in the Advisory Committee's note is to apply only to voluntary dismissals sought by an objecting creditor. In other words, an argument can be made that "plaintiff," as that term is used in Rule 7041, cannot mean the Chapter 7 trustee since there is no reason for the Chapter 7 trustee to notify herself of a proposed voluntary dismissal of her own objection to a debtor's discharge. However, such an argument at best creates ambiguity as to what the Supreme Court and Congress meant by "plaintiff" when Rule 7041 was adopted. The term "plaintiff" would certainly include the Chapter 7 trustee were it not for this separate reference to the trustee in Rule

7041. Because the term is ambiguous, it is appropriate to refer to the Advisory Committee's notes for guidance. *Hancock v. Dodson,* 958 F.2d 1367, 1377 (6th Cir.1992) (note of Advisory Committee resolves ambiguity under Fed.R.Evid. 803(22)). The Advisory Committee's notes are quite clear that no distinction is to be made between individual creditors and Chapter 7 trustees concerning voluntary dismissals of objections to discharge in exchange for consideration from the debtor. Obviously, the concerns expressed by the Advisory Committee would not be addressed if Rule 7041 itself was interpreted to exclude the Chapter 7 trustee from its requirements. Therefore, the proper interpretation of Rule 7041 is to give "plaintiff" its common meaning, which would include the Chapter 7 trustee, and treat the unqualified reference to "the trustee" in Rule 7041's notice requirement as simply a shorthand device. In other words, the drafters of Rule 7041 could have been more precise by requiring that notice be given to the Chapter 7 trustee when the movant is an individual creditor but that no such notice be given when the movant is the trustee herself. However, I conclude that the drafters opted for conciseness over precision on the gamble that the interpreter would rely upon the Advisory Committee's note to clear up whatever ambiguity in interpretation their preference for brevity in the rule itself may have created.

▬ I am also satisfied that simple notice by a Chapter 7 trustee to the United States trustee and to whomever else the court might direct does not exempt the Chapter 7 trustee from the prohibition against voluntary dismissals of objections to discharge in exchange for consideration. The Chapter 7 trustee, like an individual objecting creditor, must give appropriate notice of her intention to dismiss so that others might have the opportunity to pick up the objection at the point where the Chapter 7 trustee has chosen to stop. However, the Chapter 7 trustee, like an individual objecting creditor, must also meet whatever other conditions the court may impose upon voluntary dismissal, and the Advisory Committee's note indicates that those conditions should include provisions which will ensure that the dismissal has not been bought by an undeserving debtor. Indeed, the Advisory Committee's note suggests that a preferred method of securing such an assurance is to include as a condition to the dismissal an affidavit from at least one of the parties to the objection "that nothing has been promised to the plaintiff in consideration of the withdrawal of the objection." Fed. R. Bankr.P. 7041, Advisory Committee's Note.

To summarize, I conclude that the Chapter 7 Trustee's Rule 9019(a) motion to approve the settlement he has reached with Debtor in connection with the Chapter 7 Trustee's objection to Debtor's discharge in exchange for $15,000 (or $5,000 if paid by December 31, 2002) must be denied. The reason for the denial is that the Chapter 7 Trustee simply has no authority to settle objections to discharge in exchange for consideration. The settlement reached between the Chapter 7 Trustee and Debtor is *ultra vires* and, therefore, breaches the Chapter 7 Trustee's fiduciary duty to engage in only lawful activities on behalf of the bankruptcy estate.[16]

---

**16.** The Hoskins Group objected to the Chapter 7 Trustee's Rule 9019(a) motion on the basis that it was not in the best interests of the estate for the Chapter 7 Trustee to abandon his objection for at most $15,000 in exchange.

I interpret this objection as challenging the Chapter 7 Trustee's decision on the basis that it was not consistent with the duty of care owed by the Chapter 7 Trustee as a fiduciary to the bankruptcy estate. The record is not

The denial of the Chapter 7 Trustee's Rule 9019(a) motion does not mean that the Chapter 7 Trustee has effectively been impressed by the court to be its involuntary prosecutor with respect to Debtor's alleged transgressions under Section 727(a). It remains within the Chapter 7 Trustee's prerogative to withdraw his objection. His discretion is circumscribed only by that which is required of him by Rule 7041. Although Judge Perlman will ultimately decide what conditions will be imposed upon the Chapter 7 Trustee if he does elect to proceed with the dismissal of his objection to Debtor's discharge, I assume, given the circumstances, that one condition would be an affidavit from the Chapter 7 Trustee that the estate is not receiving any consideration from the Debtor or a third party in exchange for the dismissal. I assume that another condition would be the requirement that the Chapter 7 Trustee disclose to the United States Trustee, the Hoskins Group, and Metropolitan Title all information and strategies the Chapter 7 Trustee has developed during the course of his objection to Debtor's discharge.[17]

In reaching the conclusion that I have, I am also rejecting the other line of cases concerning voluntary dismissals of objections to discharge in exchange for consideration, they being that such settlements are *per se* prohibited because they violate public policy. *In re Moore,* 50 B.R. 661, 664 (Bankr.E.D.Tenn.1985); *Moister v. Vickers (In re Vickers),* 176 B.R. 287, 290 (Bankr.N.D.Ga.1994). Those courts which have prohibited these settlements as violating public policy have relied upon the judicial declaration that "[d]ischarge is refused to a dishonest bankrupt as a punishment for his fraud and to prevent its continuance in the future. In a sense the question has passed beyond creditors and is one of public policy ...." *In re Moore,* at 664 (citing *In re Hammerstein,* 27 Am. Bankr.Rep. 757, 758 (2d Cir.1911)). I agree that public policy considerations may be a separate basis for determining that a proposed settlement violates a trustee's duty of obedience and therefore may warrant denial of a Rule 9019(a) motion to approve the settlement. However, I prefer analyzing voluntary dismissals of objections to discharge in exchange for consideration as simply being outside the authority granted to Chapter 7 trustees (*i.e.,* such settlements are *ultra vires*) than as an affront to public policy.

Certainly, Congress' purpose in enacting Sections 727(a)(2)–(7), which all relate to misconduct of the debtor, appears to be to deny discharge to the dishonest debtor. However, the remaining subsections of Section 727(a) are indifferent to whether the debtor has been dishonest or otherwise has engaged in illegal or fraudulent behavior. For example, a debtor who has received a Chapter 7 discharge within 6 years of the commencement of her current Chapter 7 proceeding may not receive a discharge regardless of whether she is a saint or a sinner. 11 U.S.C. § 727(a)(8).

---

sufficient to determine whether the Chapter 7 Trustee's settlement with Debtor breached this separate duty, especially in light of the fact that the Chapter 7 Trustee would be entitled, as a disinterested person, to the presumption that his decision in fact was reasonable under the business judgment rule. *See, In re Dalen,* 259 B.R. at 613. In any event, the Hoskins Group's objection is moot because my own determination that the settlement is *ultra vires* is dispositive of the Chapter 7 Trustee's Rule 9019(a) motion.

**17.** The Chapter 7 Trustee disclosed at the hearing that he had conducted extensive discovery in connection with his objection. That discovery included a two-day deposition of Debtor and an extensive deposition of Ms. Levine.

Consequently, it is dangerous to attempt to discern from the exceptions to Section 727(a) some singular public policy which transcends the statute itself. I prefer to treat Section 727(a) as a congressional enactment which all parties and the court are obligated to follow. One need not look beyond the statute itself to determine what is consistent or inconsistent with "public policy." I have concluded that Congress, by choosing the words it did in Section 727, has determined that a party who elects to join the Section 727 process by filing an objection to the debtor's discharge may not subsequently leverage that objection for financial gain. However, if Congress at some later date were to change Section 727 to permit such an activity, I would have no compunction whatsoever to approve a trustee's proposal to dismiss an objection in exchange for consideration provided that the trustee's decision otherwise satisfied the requirements for court approval of a settlement under Rule 9019(a). *In re Dalen*, 259 B.R. at 611–13. I would have no need to go any further to discern whether "public policy," whatever that might be, had been violated or not.

### *CONCLUSION*

For the reasons stated in this opinion, the Chapter 7 Trustee's Rule 9019(a) motion to approve the settlement with Debtor's ex-wife, Helen Levine, is approved but the Chapter 7 Trustee's Rule 9019(a) motion to approve the settlement with Debtor is denied. The Court will enter a separate order consistent with this opinion.